LOUYA v WILLIAM BEAUMONT HOSPITAL

Docket No. 119064. Submitted February 19, 1991, at Lansing. Decided July 8, 1991, at 9:10 A.M.

Belinda Louya, for herself and as next friend of Balita Louya, a minor, and Embenga Louya brought an action in the Oakland Circuit Court against William Beaumont Hospital and Andrew Check, M.D., alleging malpractice in connection with the birth of Balita Louya, which caused her severe brain damage and retardation. Anthony M. Malizia, the attorney who filed the action and conducted discovery, was permitted to withdraw as plaintiffs' counsel. New counsel was not timely retained, and the case was dismissed with prejudice for failure to proceed, Robert L. Templin, J. The court subsequently found the lawsuit to be frivolous under MCL 600.2591(3)(a); MSA 27A.2591(3)(a) because the plaintiffs had no reasonable basis for believing that the facts offered in support of their legal position were true, and granted defendant Check's motion for costs and attorney fees against the plaintiffs and Malizia. Mr. Malizia appealed.

The Court of Appeals *held:*

The trial court clearly erred. The record does not support a finding under any of the conditions set forth in MCL 600.2591(3)(a); MSA 27A.2591(3)(a) that plaintiffs' claim was frivolous at the time the complaint was filed. To determine whether sanctions are appropriate under § 2591, it is necessary to determine whether there was a reasonable basis to believe that the facts supporting the claim were true at the time the lawsuit was filed. Here, the court erroneously focused on Mr. Malizia's opinion of the case at the time he moved to withdraw, more than one year after the suit was filed.

Reversed.

*Monica Farris Linkner* and *Anthony M. Malizia,* for Anthony M. Malizia.

*Cheatham & Acker, P.C.* (by *Lawrence J. Acker* and *Tracy A. Leahy),* for Andrew Check, M.D.

Amicus Curiae:

*Michigan Trial Lawyers Association* (by *Mark Granzotto* and *Charles P. Burbach*).

Before: SAWYER, P.J., and HOOD and MURPHY, JJ.

MURPHY, J. Plaintiffs brought suit alleging that obstetrical negligence in connection with the birth of Balita Louya caused her severe brain damage and retardation. The case was eventually dismissed. This appeal arises from the imposition of costs and attorney fees in the amount of $27,962 against plaintiffs, Balita's parents, and their former attorney, Anthony M. Malizia. The trial court based its award of these costs in favor of the two attorneys for defendant Dr. Andrew Check on its finding that the lawsuit was frivolous within the meaning of MCL 600.2591; MSA 27A.2591. Attorney Malizia appeals as of right.

The record reveals that Mr. and Mrs. Louya consulted attorney Malizia after the birth of Balita in 1986. Mrs. Louya is a registered nurse, and her deposition testimony indicates she believed her daughter's brain damage was related to the labor and delivery managed by Dr. Check. Attorney Malizia agreed to investigate the matter. After obtaining and reviewing relevant medical records, Malizia sent the records to John F. Hillabrand, M.D., a board-certified obstetrician and gynecologist located in Toledo, Ohio.[1]

Malizia received the following written report from Dr. Hillabrand before commencement of the suit:

A detailed case study and evaluation of the

---

[1] Dr. Check contends that the medical records establish that Balita's problems were not related to the labor and delivery managed by Dr. Check.

medical records of Belinda Louya have been made [sic] her on the pregnancy which culminated in the delivery of her daughter, Balita, in the Beaumont Hospital January 1, 1986.

Her obstetrical care and management throughout was seriously deficient. As a direct result, the child is now seriously and permanently brain damaged. Her attending physician, Dr. Andrew Check, is directly responsible for this poor result. To the extent that The Beaumont Hospital, its administration and medical staff were aware of and tolerated such sub-standard care, they too would share in this responsibility.

Additionally, Malizia later obtained from a board-certified neurologist in New York City an opinion that, to a reasonable degree of medical certainty, Balita's neurological injury was caused by the negligence of Dr. Check. Defendants contended that the child suffered from a degenerative disease process unrelated to any claims of medical malpractice or birth trauma.

The lawsuit was commenced on October 26, 1987, against defendant Dr. Andrew Check and defendant William Beaumont Hospital. Attorney Malizia filed an affidavit of merit on or about December 30, 1987, pursuant to MCL 600.2912d(3); MSA 27A.2912(4)(3) and MCR 2.109(B).

As the case proceeded, defendant Dr. Check was represented by two attorneys from different law firms, one provided by his medical malpractice insurer and the other independently retained by the doctor because of his concern over the possibility of a judgment in excess of policy limits. The case was mediated at $10,001, a sum rejected by both sides.[2]

---

[2] Although, apparently, the mediators did not favorably view the plaintiffs' case in view of the relatively low monetary award for the injury sustained, there was no finding by the mediators that the case

As the case progressed through discovery, Malizia began to realize that his clients' claim was not reasonably likely to succeed and he became "disenchanted" with the case. Although Malizia had expended a considerable amount of attorney time and out-of-pocket expenses, he advised his clients in early 1989 of the likelihood of an unfavorable outcome of their case and of his desire to withdraw as their counsel.[3] His motion to withdraw was granted by the trial court on March 24, 1989. The trial court allowed plaintiffs until April 15, 1989, to obtain new counsel. New counsel was not timely retained and defendants' motions to dismiss with prejudice for failure to proceed were granted.

Thereafter, the two attorneys for Dr. Check each filed separate motions pursuant to MCL 600.2591; MSA 27A.2591 for an award of costs and fees against plaintiffs and attorney Malizia. The court granted the requested relief. Its order provided in relevant part:

> [T]he Court [has] specifically found that the medical malpractice action pursued in this case against Dr. Check was a frivolous lawsuit as that term is defined by MCLA 600.2591; MSA 27A.2591.

Consequently, the court awarded one of Dr. Check's attorneys the requested sum of $20,267 in attorney fees and costs and the other attorney the requested sum of $7,695 in costs and attorney fees. The trial court appears to have made this ruling without inquiring into the reasonableness of the

was "frivolous" under the mediation court rule, MCR 2.403(K)(5). The definition of frivolous under that rule is almost identical to that found under MCL 600.2591(3)(a); MSA 27A.2591(3)(a).

[3] Around this time, the trial court granted defendants' motion ordering plaintiffs to post a bond in the amount of $10,000 to cover costs and other reasonable expenses. The bond was posted on February 3, 1989.

costs and fees sought and without making any factual findings pertaining thereto.

In this appeal, we are called upon to decide whether the trial court committed error requiring reversal by concluding that this was a frivolous lawsuit under MCL 600.2591; MSA 27A.2591, when plaintiffs' counsel had obtained a written report from a medical expert before filing suit and had timely filed an affidavit of merit.

MCL 600.2591; MSA 27A.2591 was adopted in 1986 as part of what is commonly known as the "tort reform" legislation. The statute provides in relevant part:

> Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

The statute requires that the amount of costs and fees awarded be "reasonable," MCL 600.2591(2); MSA 27A.2591(2), and specifically defines the term "frivolous":

> "Frivolous" means that at least 1 of the following conditions is met:
> (i) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.
> (ii) The party had no reasonable basis to believe that the facts underlying the party's legal position were in fact true.
> (iii) The party's legal position was devoid of arguable legal merit. [MCL 600.2591(3)(a); MSA 27A.2591(3)(a).]

The "prevailing party" is a party who wins on the

entire record. MCL 600.2591(3)(b); MSA 27A.2591(3)(b).

Defendants did not claim that the primary purpose of the plaintiffs in initiating this lawsuit was to harass, embarrass, or injure anyone. Nor can there be any serious contention that plaintiffs' legal position was devoid of arguable legal merit. Clearly, a claim that a physician is professionally negligent, that the parties sustained injury and damages, and that the professional negligence of the defendant was a proximate cause of the injury and damages to the plaintiffs is cognizable under Michigan law. See SJI2d 30.03. Thus, this Court must focus on the question whether plaintiffs "had no reasonable basis to believe that the facts underlying that party's legal position were in fact true." MCL 600.2591(3)(a)(ii); MSA 27A.2591(3)(a)(ii).

Before resolving this issue, it is instructive to look at another part of the 1986 "tort reform" legislation, namely, MCL 600.2912d; MSA 27A.2912(4), which was enacted with the same effective date as MCL 600.2591; MSA 27A.2591. This statute, enacted to ensure that medical negligence actions would only be filed upon a reasonable belief that the facts underlying a plaintiff's position are in fact true, provides in part:

> (1) In an action alleging medical malpractice, the complaint shall be accompanied either by security for costs or by an affidavit, as required by this section.
>
> * * *
>
> (3) The plaintiff in an action alleging medical malpractice shall be in compliance with subsection (1) if the plaintiff's attorney . . . files an affidavit attesting that the attorney signing the complaint . . . has obtained a written opinion from a licensed physician . . . that the claim alleged is meritorious

within 91 days after the filing of the complaint. [MCL 600.2912d; MSA 27A.2912(4)].[4]

The Legislature sought to accomplish its objective of eliminating frivolous claims in the medical malpractice area by requiring a plaintiff to either file a bond to secure the defendant's costs or file an affidavit indicating a written opinion was obtained from a qualified person that the claim is meritorious. Although these statutory requirements may have some adverse effect on a party's ability to sue, it is not claimed that they are an unlawful burden. Nevertheless, we do not believe that the requirements should be construed in a manner that effectively precludes a party from having access to the courts to redress a grievance. Before enactment of the statute in question, no requirement to post a bond or obtain a letter of merit from a qualified professional existed. These requirements and the concomitant penalties are creatures of statute and, therefore, the authority for the penalty award of attorney fees and costs must also be found within the statute.

The record clearly shows that attorney Malizia obtained a written opinion from Dr. Hillabrand and filed the necessary affidavit as required by MCL 600.2912d; MSA 27A.2912(4), as well as MCR 2.109(B). Nevertheless, the trial court apparently concluded that plaintiffs had no reasonable basis for believing that the facts supporting their legal position were true. In view of both the purpose of the affidavit of merit prescribed in MCL 600.2912d(3); MSA 27A.2912(4)(3) and the fact that a written opinion letter was obtained from a

---

[4] The effect of statutory changes in §§ 2591 and 2912d were procedurally authorized by court rule changes in MCR 2.109(B) and 2.625. The statutory changes were enacted by the Legislature to minimize the burdens imposed on litigants by frivolous lawsuits and frivolous defenses.

board-certified obstetrician and gynecologist, we conclude the trial court's finding that plaintiffs did not have a reasonable basis to believe the facts presented was clearly erroneous.[5]

The trial court seemed to base its finding of frivolousness at least in part upon certain statements made by attorney Malizia regarding the case when he filed his motion to withdraw. The following excerpt from the transcript of the hearing regarding the motion for costs and attorney fees is enlightening:

> *Mr. Malizia:* Your Honor, perhaps I can clarify this. Your Honor, I'm the original attorney in this case. Your Honor, these claims are so outrageous that I think it's ridiculous.
>
> Your Honor, to start from the beginning, in 1987 the Louyas came to me. In fact, they're in court today.
>
> *The Court:* Well, we're not going to go over the case again. We've spent a lot of time on this case, it's a very thick file—
>
> *Mr. Malizia:* All right. Yes, your Honor. Well, your Honor, there—
>
> *The Court:* —and many prior sessions. The Court is very familiar with it and the Court concurs completely in what defendants' counsel has to say, Mr. Feringa and Mr. Acker.
>
> *Mr. Malizia:* Your Honor, may I speak, please?

---

[5] Defense counsel argues on appeal that plaintiffs' claim was frivolous because the medical records provided to Dr. Hillabrand were insufficient and incomplete, Dr. Hillabrand was eighty years old, was not practicing in a hospital setting, and did not have staff privileges, and his report was conclusory. We note that no findings of fact along these lines were made by the trial court. Further, the record does not suggest that Dr. Hillabrand, a board-certified obstetrician and gynecologist, was not licensed as required by MCL 600.2912d; MSA 27A.2912(4). A brief report from an expert stating a conclusion is not unusual. In fact, trial strategy would frequently encourage a brief conclusory report to be supplemented by deposition or trial testimony rather than a detailed narrative report that could provide fodder for cross-examination.

Your Honor, I think I have a—the Court ought to allow me a chance to speak, your Honor.

*The Court:* All right, certainly you can speak. But make it short.

*Mr. Malizia:* Your Honor—

*The Court:* Something that's new, nothing we've gone over before.

*Mr. Malizia:* Okay, your Honor, the allegation is that this is a frivolous lawsuit. Prior to filing this lawsuit, I was the attorney. I investigated this matter. I obtained the medical records. I specialize in this area of law. I've reviewed hundreds of cases. I thought it was a case worthy enough to send to an expert. I sent it to an expert, Dr. Hillerbrand [sic]. He reviewed the case. The Court has a copy of his report, his written report.

*The Court:* I don't have it. I don't have it and they never got it.

*Mr. Malizia:* Well, your Honor, I filed it and he's filed it. It's there, your Honor, like I say. Your Honor, he said this is a very—his report—

*The Court:* Well, why didn't you do this a couple of years ago when it was demanded by the requests for admissions?

*Mr. Malizia:* Your Honor, it's been in the file the whole time. Your Honor, I—

*The Court:* I don't have it.

*Mr. Malizia:* Your Honor, I filed it, sir. Mr. Walker has filed it.

*The Court:* When did you file it? When did you file it?

*Mr. Malizia:* When did I file it? This has been in the system since the day—

*The Court:* I don't care about the system. When did the plaintiffs have it—or defendants have it?

*Mr. Malizia:* They've had it over a year. You can ask Mr. Acker in court and ask Mr. Feringa if he's known of this report for at least a year. Ask him in court, your Honor. Did you know about this, Mr. Acker, this report?

*Mr. Acker [Counsel for Defendant Dr. Check]:* My recollection is that the report was added as an

exhibit to the mediation summary. That was the first time that defendants had access to it.

*Mr. Malizia:* Your Honor, this is an outrage.

*Mr. Acker:* His deposition was never permitted by plaintiff's counsel notwithstanding the Court's order.

*Mr. Malizia:* Your Honor, your Honor, listen, has the Court read my motion? My motion says that I filed, I consulted with Dr. Hillerbrand [sic], he told me it was a meritorious case. He filed a report. He sent that report to me in August of 1987. Based on that report which the Court has a copy of, I filed an affidavit of merit and I proceeded further. I secured the second expert, a neurologist, a Dr. Cohen, who agreed that the malpractice of Dr. Check proximately caused a neurological injury to this girl. We proceeded on this basis. I had both of these experts prior to filing the lawsuit, your Honor.

As the case progressed, I became sort of disenchanted with it. Besides I encountered tremendous financial difficulty. I lay this out in my motion, your Honor.

*The Court:* What about your testimony before the Court when you say "I do not feel that this is a case that can be reasonably won in court. . . . "[6]

*Mr. Malizia:* That was—

*The Court:* ". . . I wonder whether I could even get a prima facie case in, your Honor. I've had this case recently reviewed by two other attorneys, one is a good friend of mine, a very, very prominent medical malpractice attorney in this area. I have given him the entire file, told him to review the case and to give me his opinion. He did that. He spent a lot of time on the case and his conclusion is the same as my conclusion. This is a case that can't be proven."

*Mr. Malizia:* All right, your Honor, first of all, that doesn't mean—

---

[6] This reference is to a statement made by attorney Malizia at the hearing regarding the motion to withdraw as attorney for the plaintiffs.

*The Court:* You're saying it doesn't mean that.

*Mr. Malizia: Wait, your Honor, that doesn't mean—*

*The Court:* Well, now we've spent enough—

*Mr. Malizia: —it was frivolous at the time I filed it. What's happened is that over time I became disenchanted with the case. I felt that it was—either problems cropped up, problems came up with the case.*

*The Court:* The rules were never complied with. The court rules were never complied with, the discovery rules were not complied with. The case should have been—

*Mr. Malizia:* They were, your Honor.

*The Court:* —should have been dismissed much earlier.[7]

*Mr. Malizia:* No.

*The Court:* I'm denying your motion. I'm granting plaintiff's—or defendant's—motions for costs in the amount of twenty-some thousand dollars and seven-some thousand dollars.

*Mr. Feringa [Co-counsel for Defendant Dr. Check]:* Thank you, your Honor, we'll present orders.

*Mr. Acker:* Thank you.


As can be seen, attorney Malizia did not indicate that the case was frivolous when filed. He simply stated that after the litigation had progressed he became convinced that his clients would not prevail at trial.

We conclude that the trial court erred in this case when it considered attorney Malizia's opinion of the merits of plaintiffs' cause at the time of his

---

[7] The trial court was obviously disturbed with attorney Malizia's apparent failure to comply with certain discovery rules during the pendency of the case. Although appropriate court rules exist to address such noncompliance, the trial court did not base its decision to award costs and attorney fees on any authority other than the frivolous lawsuit provision of MCL 600.2591; MSA 27A.2591, as reflected by its order.

motion to withdraw as counsel. To determine whether sanctions are appropriate under MCL 600.2591; MSA 27A.2591, it is necessary to determine whether there was a reasonable basis to believe that the facts supporting the claim were true *at the time the lawsuit was filed,* not more than a year later at the time of counsel's motion to withdraw. No experienced attorney or judge would dispute the fact that discovery and other circumstances during the course of litigation affect the evaluation of a case and its potential outcome if tried. If this were not true, there would seldom, if ever, be settlement of a case before trial. There is a significant difference between bringing a lawsuit with no basis in law or fact at the outset and failing to present sufficient evidence to justify relief at trial. See *Mitchell v Office of Los Angeles Co Superintendent of Schools,* 805 F2d 844 (CA 9, 1986).

Furthermore, the mere fact that the attorney may doubt the possibility of success on the merits of a case, even at the outset of litigation, does not necessarily and logically lead to a conclusion that the claim is "frivolous" as defined by MCL 600.2591(3)(a)(ii); MSA 27A.2591(3)(a)(ii). Rule 3.1 of the Michigan Rules of Professional Conduct prohibits an attorney from instituting or defending a frivolous action. However, the comment to the rule also provides:

> The filing of an action or defense or similar action taken for a client is not frivolous merely because the facts have not first been fully substantiated or because the lawyer expects to develop vital evidence only by discovery. *Such action is not frivolous even though the lawyer believes that the client's position ultimately will not prevail.* [Emphasis added.]

In our view, the statute at issue and the rules of professional conduct should be read in harmony, if possible, to avoid the anomalous result of holding a lawyer personally liable for an opponent's costs and attorney fees after ethically representing a client's interest.

It would also appear to be inconsistent with public policy to draw upon an attorney's opinion regarding the unlikelihood of his client's claim prevailing at trial, as expressed in a motion to withdraw as counsel, as the basis for finding frivolousness under the statute. If this were permitted, an attorney, who without frivolity started a suit but became convinced that it lacked merit during the discovery process, would be induced to proceed to trial rather than forthrightly address the situation with the client in an effort to terminate the litigation.

We will not construe MCL 600.2591; MSA 27A.2591 in a manner that has a chilling effect on advocacy or prevents the filing of all but the most clear-cut cases. Nor will we construe the statute in a manner that prevents a party from bringing a difficult case or asserting a novel defense, or penalizes a party whose claim initially appears viable but later becomes unpersuasive. Moreover, an attorney or party should not be dissuaded from disposing of an initially sound case which becomes less meritorious as it develops because they fear the penalty of attorney fees and costs under this statute.

In this case, the court's failure to focus its inquiry on what Mr. Malizia reasonably believed at the time he commenced the case is of critical importance. The statutory scheme is designed to sanction attorneys and litigants who file lawsuits or defenses without reasonable inquiry into the factual basis of a claim or defense, not to discipline

those whose cases are complex or face an "uphill fight." The ultimate outcome of the case does not necessarily determine the issue of frivolousness.

In this case, attorney Malizia, fortified by his own legal experience with medical malpractice cases and input from the child's mother, a registered nurse, filed suit only after obtaining from Dr. Hillabrand, a board-certified obstetrician and gynecologist, a written opinion letter that suggested a meritorious case. According to Malizia, this was supplemented by review of the medical records and consultation with a neurologist. Malizia obtained a letter of merit from a licensed physician and filed an affidavit as required by MCL 600.2912d; MSA 27A.2912(4) and MCR 2.109(B). For the trial court to conclude under these facts that the action was frivolous and to award costs and attorney fees against the plaintiffs and attorney Malizia was clear error. The record simply does not support a finding under any of the three conditions set forth in MCL 600.2591(3)(a); MSA 27A.2591(3)(a) that plaintiffs' claim was frivolous at the time the complaint was filed.

The decision of the trial court awarding attorney fees and costs is reversed.