RANDOM HOUSE, INC v DEPARTMENT OF TREASURY

Docket No. 307035. Submitted November 15, 2012, at Lansing. Decided November 27, 2012, at 9:05 a.m. Leave to appeal denied, 494 Mich ___.

Random House, Inc., a business entity incorporated in the state of New York that is primarily engaged in the publication and sale of books in interstate commerce, filed Michigan single business tax returns from 1993 to 1996 with regard to business transacted in Michigan. As a result of an Internal Revenue Service audit in 1987 and 1988, Random House had been required to capitalize and depreciate its costs associated with the purchase of original or master manuscripts from authors for federal tax purposes. Random House filed an amended return in 1998 requesting refunds from the Michigan Department of Treasury for capital acquisition deductions for costs incurred when purchasing original or master manuscripts from authors. The Department of Treasury denied the requested refunds. Random House then brought an action in the Court of Claims contesting the denial of the requested refunds. The case was held in abeyance at the request of the parties for more than 10 years and was then reinstated to the active docket at the request of the parties. The parties moved for summary disposition. The Court of Claims, Paula J. M. Manderfield, J., denied defendant's motion and granted plaintiff's motion. Defendant appealed.

The Court of Appeals *held*:

1. The Code of Federal Regulations provides at 26 CFR 1.263A-2(a)(2)(ii) that, for purposes of determining whether a taxpayer producing intellectual or creative property is producing tangible personal property or intangible property, the term tangible personal property includes books and other similar property embodying words, ideas, concepts, images, or sounds by the creator thereof. The costs of producing such tangible property, including prepublication expenditures incurred by publishers and payments made to authors (other than commissions for sales of books that have already taken place), are required by 26 CFR 1.263A-2(a)(2)(ii)(A)(*1*) to be capitalized. In addition, 26 CFR 1.263A-1T(c)(4) provides that costs that are capitalized under § 263A are recovered through depreciation, amortization, cost of

goods sold, or by an adjustment to basis at the time the property is used, sold, placed in service, or otherwise disposed of by the taxpayer.

2. The Internal Revenue Code provides that the estimated useful life of an asset is not necessarily the useful life inherent in the asset but is the period over which the asset may reasonably be expected to be useful to the taxpayer in his or her trade or business or in the production of his or her income. There is no merit to defendant's argument that manuscripts and the stories contained therein are not subject to wear and tear, decay, or decline.

3. Plaintiff's costs associated with the purchase of master manuscripts were not only eligible for depreciation under the Internal Revenue Code, but the Internal Revenue Service actually required plaintiff to depreciate those costs. The provision of the Single Business Tax Act at issue in this case, MCL 208.23(c), provided that after apportionment as provided for in MCL 208.41, the tax base shall be adjusted by deducting the cost, including fabrication and installation, paid or accrued in the taxable year of tangible assets of a type that are, or under the Internal Revenue Code will become, eligible for depreciation, amortization, or accelerated capital cost recovery for federal income tax purposes. Plaintiff's costs at issue are clearly "of a type that are, or under the internal revenue code will become, eligible for depreciation, amortization, or accelerated cost recovery for federal income tax purposes" as required by MCL 208.23(c). The Court of Claims properly granted summary disposition in favor of plaintiff.

Affirmed.

*Honigman Miller Schwartz and Cohn LLP* (by *Patrick R. Van Tiflin* and *Daniel L. Stanley*) for plaintiff.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Richard A. Bandstra*, Chief Legal Counsel, and *Scott L. Damich*, Assistant Attorney General, for defendant.

Before: BORRELLO, P.J., and FITZGERALD and OWENS, JJ.

PER CURIAM. Defendant appeals a Court of Claims order granting plaintiff's motion for summary disposition. On appeal, defendant argues that the trial court erred by holding that plaintiff was entitled to capital-

acquisition deductions for the tax years at issue and that defendant had improperly denied plaintiff's request for a tax refund. We affirm.

Plaintiff is a business entity incorporated in the state of New York that is primarily engaged in the publication and sale of books in interstate commerce. From 1993 to 1996, plaintiff transacted business in Michigan. Plaintiff timely filed Michigan single business tax (SBT) returns for those years. In March 1998, plaintiff filed an amended Michigan return requesting refunds from defendant for capital acquisition deductions (CAD) "for costs incurred in its book publication activities." In particular, plaintiff had expended funds purchasing original or "master manuscripts" from authors. For the four years from 1993 through 1996, plaintiff requested refunds of $53,130, $75,235, $41,259, and $29,856, respectively. Defendant denied plaintiff's requested refunds.

On February 11, 2000, plaintiff initiated this lawsuit in the Court of Claims, contesting defendant's denial of the requested refunds. On March 20, 2000, a Court of Claims judge issued an order at the request of the parties holding the case in abeyance pending this Court's decision in *Jefferson Smurfit Corp v Dep't of Treasury*, 248 Mich App 271; 639 NW2d 269 (2001). More than 10 years later, on August 2, 2010, at the request of the parties, another Court of Claims judge removed the case from abeyance and reinstated it to the active docket.

On August 9, 2011, plaintiff moved in the trial court for summary disposition pursuant to MCR 2.116(C)(10). Plaintiff argued that the "costs were of the same type that were capitalized and depreciated for federal tax purposes as required by federal auditors in a prior audit." Plaintiff cited § 263A(b)(1) and (2) of the Internal Revenue Code (IRC), and 26 CFR 1.263A-2(a)(2)(ii)(A)(*1*). IRC 263A provides, in part, as follows:

(a) **Nondeductibility of certain direct and indirect costs.**

(1) **In general.** In the case of any property to which this section applies, any costs described in paragraph (2)—

(A) in the case of property which is inventory in the hands of the taxpayer, shall be included in inventory costs, and

(B) in the case of any other property, shall be capitalized.

(2) **Allocable costs.** The costs described in this paragraph with respect to any property are—

(A) the direct costs of such property, and

(B) such property's proper share of those indirect costs (including taxes) part or all of which are allocable to such property.

Any cost which (but for this subsection) could not be taken into account in computing taxable income for any taxable year shall not be treated as a cost described in this paragraph.

(b) **Property to which section applies.** Except as otherwise provided in this section, this section shall apply to—

(1) **Property produced by taxpayer.** Real or tangible personal property produced by the taxpayer.

\* \* \*

For purposes of paragraph (1), the term "tangible personal property" shall include a film, sound recording, video tape, book, or similar property. [IRC 263A(a) and (b); 26 USC 263A(a) and (b).]

## 26 CFR 1.263A-2(a)(2) provides as follows:

(2) *Tangible personal property*—(i) *General rule.* In general, section 263A applies to the costs of producing tangible personal property, and not to the costs of producing intangible property. For example, section 263A applies to the costs

manufacturers incur to produce goods, but does not apply to the costs financial institutions incur to originate loans.

(ii) *Intellectual or creative property.* For purposes of determining whether a taxpayer producing intellectual or creative property is producing tangible personal property or intangible property, the term tangible personal property includes films, sound recordings, video tapes, books, and other similar property embodying words, ideas, concepts, images, or sounds by the creator thereof. Other similar property for this purpose generally means intellectual or creative property for which, as costs are incurred in producing the property, it is intended (or is reasonably likely) that any tangible medium in which the property is embodied will be mass distributed by the creator or any one or more third parties in a form that is not substantially altered. However, any intellectual or creative property that is embodied in a tangible medium that is mass distributed merely incident to the distribution of a principal product or good of the creator is not other similar property for these purposes.

(A) *Intellectual or creative property that is tangible personal property.* Section 263A applies to tangible personal property defined in this paragraph (a)(2) without regard to whether such property is treated as tangible or intangible property under other sections of the Internal Revenue Code. Thus, for example, section 263A applies to the costs of producing a motion picture or researching and writing a book even though these assets may be considered intangible for other purposes of the Internal Revenue Code. Tangible personal property includes, for example, the following:

(1) *Books.* The costs of producing and developing books (including teaching aids and other literary works) required to be capitalized under this section include costs incurred by an author in researching, preparing, and writing the book. (However, see section 263A(h), which provides an exemption from the capitalization requirements of section 263A in the case of certain free-lance authors.) In addition, the costs of producing and developing books include pre-

publication expenditures incurred by publishers, including payments made to authors (other than commissions for sales of books that have already taken place), as well as costs incurred by publishers in writing, editing, compiling, illustrating, designing, and developing the books. The costs of producing a book also include the costs of producing the underlying manuscript, copyright, or license. (These costs are distinguished from the separately capitalizable costs of printing and binding the tangible medium embodying the book (e.g., paper and ink).) See § 1.174–2(a)(1), which provides that the term research or experimental expenditures does not include expenditures incurred for research in connection with literary, historical, or similar projects.

On September 21, 2011, defendant also moved for summary disposition pursuant to MCR 2.116(C)(10). Defendant argued that plaintiff's "focus on the master manuscript is a misleading distraction." "[Plaintiff] has purchased the rights to publish books," and "[plaintiff] has thus acquired an intangible asset." Defendant also argued that IRC 263A does not apply because it "does not affect the nature of the true underlying asset." Defendant asserted that capitalizing "advanced royalty payments" is simply an accounting method, "not depreciation, amortization or accelerated capital cost recovery of a tangible asset." Finally, defendant argued that the Legislature, as shown in the 1995 amendment of MCL 208.23, 1995 PA 282, "always contemplated the physical investment of capital in Michigan." The trial court granted plaintiff's motion after concluding that plaintiff was entitled to claim a CAD for the tax years in issue and ordered defendant to refund plaintiff $194,480.00, plus statutory interest.

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Jimkoski v Shupe*, 282 Mich App 1, 4; 763 NW2d 1 (2008). Issues of statutory interpretation are also subject to review de novo. *Driver v Naini*, 490 Mich 239, 246; 802 NW2d 311 (2011). The

trial court granted plaintiff's motion for summary disposition pursuant to MCR 2.116(C)(10). This Court has summarized applicable standards of review as follows:

> "A motion brought under MCR 2.116(C)(10) tests the factual support for a claim. The pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties must be considered by the court when ruling on a motion brought under MCR 2.116(C)(10). When reviewing a decision on a motion for summary disposition under MCR 2.116(C)(10), this Court 'must consider the documentary evidence presented to the trial court "in the light most favorable to the nonmoving party." ' A trial court has properly granted a motion for summary disposition under MCR 2.116(C)(10) 'if the affidavits or other documentary evidence show that there is no genuine issue in respect to any material fact, and the moving party is entitled to judgment as a matter of law.' " [*American Home Assurance Co v Mich Catastrophic Claims Ass'n*, 288 Mich App 706, 716-717; 795 NW2d 172 (2010) (citations omitted).]

Michigan's Single Business Tax Act (SBTA)[1] imposed "a specific tax upon the adjusted tax base of every person with business activity in this state that is allocated or apportioned to this state . . . . " MCL 208.31(1). "Tax base" was defined as "business income," subject to apportionment, allocation, and adjustment as provided by the SBTA. MCL 208.9(1). "Business income" was defined as "federal taxable income . . . . " MCL 208.3(3). "A taxpayer whose business activities are taxable both within and without this state," such as plaintiff, was required to apportion its tax base as provided by the SBTA. MCL 208.41.

The CAD provision at issue in this case, MCL 208.23(c), provided, in relevant part, as follows:

---

[1] Michigan's Single Business Tax Act was repealed by 2006 PA 325 effective for tax years beginning after December 31, 2007.

After . . . apportionment as provided in [MCL 208.41], the tax base shall be adjusted by the following:

\* \* \*

(c) For a tax year beginning after September 30, 1989 but before January 1, 1997 and for tax years beginning after December 31, 1996 and before January 1, 2000 as provided in subdivision (h), *deduct the cost, including fabrication and installation, paid or accrued in the taxable year of tangible assets of a type that are, or under the internal revenue code will become, eligible for depreciation, amortization, or accelerated capital cost recovery for federal income tax purposes.* This deduction shall be multiplied by the apportionment factor for the taxable year as defined in chapter 3. This subdivision does not apply to a taxpayer's first tax year ending after September 29, 1991. [Emphasis added.]

We must therefore determine whether plaintiff's costs were for (1) tangible assets and (2) if so, whether those tangible assets were eligible for depreciation, amortization, or accelerated capital cost recovery under the IRC. At the heart of this appeal is a determination of what exactly is being purchased by plaintiff. Plaintiff argues on appeal, as it did consistently in the Court of Claims, that the costs at issue are associated with purchasing physical "master manuscripts." Defendant argues that the master manuscripts are merely ancillary to plaintiff's actual purchases, which are intangible publication rights.

The parties offer no definition of the term "master manuscripts." However, a "manuscript" is defined as follows: "An unpublished writing; an author's typescript or written work product that is produced for publication." Black's Law Dictionary (7th ed). "Master" is defined, in part, as follows: "Being an original from which copies are made." *The American Heritage Dictionary of the English*

*Language* (1996). Thus, it is our understanding that plaintiff is claiming that it is buying the original of an unpublished writing that will serve as the foundation for producing copies for sale.

The line between tangible and intangible property is somewhat fuzzy when the issue concerns a literary work. As stated in *Winter v G P Putnam's Sons*, 938 F2d 1033, 1034 (CA 9, 1991), "[a] book containing Shakespeare's sonnets consists of two parts, the material and print therein, and the ideas and expression thereof. The first may be a product, but the second is not." Here, the line has been clarified, at least for tax purposes, by legislative policy choices embodied in the IRC and CFR. 26 CFR 1.263A-2(a)(2)(ii) provides that, "[f]or purposes of determining whether a taxpayer producing intellectual or creative property is producing tangible personal property or intangible property, the term tangible personal property includes . . . books . . . and other similar property embodying words, ideas, concepts, images, or sounds by the creator thereof." The costs of producing such tangible property, including "prepublication expenditures incurred by publishers, including payments made to authors (other than commissions for sales of books that have already taken place)," are required to be capitalized. 26 CFR 1.263A-2(a)(2)(ii)(A)(*1*). See 26 CFR 1.263A-1; IRC 263A. In addition, 26 CFR 1.263A-1T(c)(4) provides:

> **(4) *Recovery of capitalized costs*.** Except as provided in § 1.162–3T(a)(2) (amounts paid to produce incidental materials and supplies), costs that are capitalized under section 263A are recovered through depreciation, amortization, cost of goods sold, or by an adjustment to basis at the time the property is used, sold, placed in service, or otherwise disposed of by the taxpayer. Cost recovery is determined by the applicable Internal Revenue Code and regulation provisions relating to use, sale, or disposition of property.

As a result of an IRS audit in 1987 and 1988, plaintiff was required to capitalize and depreciate its costs associated with the purchase of master manuscripts. Thus, these costs were not only *eligible* for depreciation under the IRC, but the IRS actually *required* plaintiff to depreciate these costs. See 26 CFR 1.263A-2(a)(2)(ii)(A)(*1*).

Defendant's argument that manuscripts and the stories contained therein are not subject to wear and tear, decay, or decline, is without merit. In fact, the IRC provides that, for the purposes of depreciation,

> the estimated useful life of an asset is not necessarily the useful life inherent in the asset but is the period over which the asset may reasonably be expected to be useful to the taxpayer in his trade or business or in the production of his income. This period shall be determined by reference to his experience with similar property taking into account present conditions and probable future developments. [26 CFR 1.167(a)-1(b).]

Defendant characterizes physical depreciation in the colloquial context, rather than in the applicable and appropriate accounting context as provided for by the IRC. Plaintiff's costs at issue in this case are clearly "of a type that are, or under the internal revenue code will become, eligible for depreciation, amortization, or accelerated capital cost recovery for federal income tax purposes" as required by the statute. MCL 208.23(c).

Affirmed.

BORRELLO, P.J., and FITZGERALD and OWENS, JJ., concurred.