# STATE OF MICHIGAN

# COURT OF APPEALS

WAYNE STATE UNIVERSITY,

        Plaintiff/Counter-Defendant-
Appellee,

v

MICHAEL BANNOURA,

        Defendant/Counter-Plaintiff-
Appellant.

UNPUBLISHED
November 17, 2015

No. 322715
Wayne Circuit Court
LC No. 12-011119-CZ

Before: SERVITTO, P.J., and WILDER and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right the trial court's order granting summary disposition in favor of plaintiff and dismissing defendant's counterclaim in its entirety[1]. Defendant also challenges the trial court's earlier grant of partial summary disposition in favor of plaintiff, dismissing Count IV of defendant's counterclaim, which alleged a violation of the Elliott-Larson Civil Rights Act (CRA), MCL 37.2101 *et seq.* Finally, defendant challenges the trial court's failure to award him damages after granting summary disposition in his favor on plaintiff's principal landlord-tenant eviction complaint. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This action began in the 36th District Court when plaintiff Wayne State University (WSU) initiated eviction proceedings against defendant relating to his operation of Delilah's Café in plaintiff's David Adamany Undergraduate Library. The eviction suit involved a dispute regarding whether the lease agreement between plaintiff and defendant allowed defendant to unilaterally exercise his option to renew the lease for a five-year term, or whether the exercise of the option required defendant's approval. Defendant was granted permission to file a counterclaim, and the action was transferred to the circuit court. Defendant then filed a

---

[1] The then-pending claims asserted in defendant's counterclaim were for specific performance, unjust enrichment, quantum meruit, fraudulent misrepresentation, and tortious interference with an advantageous business relationship.

-1-

counterclaim asserting: (a) breach of contract, (b) specific performance, (c) unjust enrichment, (d) violation of the CRA, premised on national origin discrimination, (e) quantum meruit, and (f) fraudulent misrepresentation.

Defendant moved for, and was granted, summary disposition on plaintiff's eviction claim. The trial court found that the language of the lease agreement allowed defendant to unilaterally exercise the option to renew his lease for five years.[2]

The case then proceeded on defendant's counterclaim. The trial court granted defendant's motion to amend his counterclaim to add a count of tortious interference with an advantageous business relationship. Plaintiff then moved for partial summary disposition pursuant to MCR 2.116(C)(10) on defendant's CRA claim. The trial court granted that motion, finding no genuine issue of material fact on the issue of whether plaintiff's conduct amounted to discrimination on the basis of race.[3]

Plaintiff then moved for summary disposition, pursuant to MCR 2.116(C)(7), (8) and (10), on the remainder of the claims asserted in defendant's amended counterclaim. The trial court granted the motion in part from the bench, holding that (1) defendant's claim for specific performance was rendered moot by its grant of summary disposition to defendant in the eviction case, (2) defendant's unjust enrichment and quantum meruit claims were also rendered moot by that ruling,[4] and (3) defendant had failed to allege or prove a fraudulent misrepresentation on the part of plaintiff. The trial court took defendant's motion under advisement with respect to defendant's breach of contract and tortious interference with an advantageous business relationship claims, and permitted supplemental briefing on the issues relating to those claims. The trial court subsequently issued an order incorporating its oral holding and granting summary disposition to plaintiff on all of defendant's remaining claims.

The trial court also denied defendant's claim for attorney fees. The trial court held that plaintiff's eviction claim was not frivolous because it was based upon a reasonable interpretation of the lease agreement. The trial court noted that defendant had provided no authority in support of his claim for attorney fees in relation to his counterclaim (on which he did not prevail).

This appeal followed. On appeal, defendant challenges the trial court's grant of summary disposition except as to his fraudulent misrepresentation claim.

---

[2] Plaintiff has not appealed the trial court's dismissal of its eviction claim.

[3] Although the trial court made reference to "race" and "racial discrimination," it is clear from context that the trial court was addressing defendant's claim for violation of the CRA based on discrimination due to national origin.

[4] The trial court also noted the existence of an express, rather than implied, contract, in finding that these claims lacked a legal basis.

## II. STANDARD OF REVIEW

"This Court reviews de novo a trial court's ruling on a motion for summary disposition. Issues of statutory interpretation are also subject to review de novo." *Random House, Inc v Dep't of Treasury*, 298 Mich App 566, 571; 828 NW2d 454 (2012). Although the trial court did not specify under which subrule it granted summary disposition on defendant's claims of unjust enrichment, quantum meruit and fraudulent misrepresentation, we review their dismissal under MCR 2.116(C)(8) because the trial court found these claims deficient on their face.

> A motion for summary disposition brought under MCR 2.116(C)(8) tests the legal sufficiency of the complaint on the basis of the pleadings alone. The purpose of such a motion is to determine whether the plaintiff has stated a claim upon which relief can be granted. The motion should be granted if no factual development could possibly justify recovery. [*Beaudrie v Henderson*, 465 Mich 124, 129-130; 631 NW2d 308 (2001).]

We review the trial court's dismissal of the remaining claims under MCR 2.116(C)(10) because the record reflects that the trial court considered evidence submitted in the form of depositions, affidavits and other documentation.

> "A motion brought under MCR 2.116(C)(10) tests the factual support for a claim. The pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties must be considered by the court when ruling on a motion brought under MCR 2.116(C)(10). When reviewing a decision on a motion for summary disposition under MCR 2.116(C)(10), this Court 'must consider the documentary evidence presented to the trial court in the light most favorable to the nonmoving party.' " "A trial court has properly granted a motion for summary disposition under MCR 2.116(C)(10) 'if the affidavits or other documentary evidence show that there is no genuine issue in respect to any material fact, and the moving party is entitled to judgment as a matter of law.' " [*American Home Assurance Co v Mich Catastrophic Claims Ass'n*, 288 Mich App 706, 716-717; 795 NW2d 172 (2010) (citations omitted).]

## III. CRA VIOLATION

Initially, plaintiff contends this Court is without jurisdiction to consider the CRA violation claim because of procedural deficiencies in the filing of defendant's appeal. Specifically, plaintiff argues that defendant failed to comply with MCR 7.204(B) and (C) by not filing a copy of the trial court's November 1, 2013 summary disposition order, or the hearing transcript associated with that ruling, and that this failure precludes this Court's consideration of the trial court's ruling on defendant's CRA claim. Plaintiff filed a motion in this Court seeking dismissal of this appeal for the same reasons, which this Court denied. *Wayne State University v Bannoura*, unpublished order of the Court of Appeals, entered March 25, 2015 (Docket No. 322715). Because this Court has already addressed this procedural issue, reconsideration of the issue is precluded by the law of the case doctrine. See *Roberts v Saffell*, 497 Mich 921, 924; 857 NW2d 652 (2014), quoting *Grievance Administrator v Lopatin*, 462 Mich 235, 260; 612 NW2d 120 (2000). We therefore decline to dismiss this aspect of plaintiff's appeal on that ground.

Defendant asserts that, as an independent contractor leasing space from plaintiff, he was subject to discrimination by plaintiff based on his Middle Eastern origins, and that the trial court erred in holding otherwise. We disagree. MCL 37.2102(1) provides:

> The opportunity to obtain employment, housing and other real estate, and the full and equal utilization of public accommodations, public service, and educational facilities without discrimination because of religion, race, color, national origin, age, sex, height, weight, familial status, or marital status as prohibited by this act, is recognized and declared to be a civil right.

Additionally, MCL 37.2502(1) states, in relevant part:

> (1) A person engaging in a real estate transaction, or a real estate broker or salesman, shall not on the basis of religion, race, color, national origin, age, sex, familial status, or marital status of a person or a person residing with that person:
>
> (a) Refuse to engage in a real estate transaction with a person.
>
> (b) Discriminate against a person in the terms, conditions, or privileges of a real estate transaction or in the furnishing of facilities or services in connection with a real estate transaction.
>
> (c) Refuse to receive from a person or transmit to a person a bona fide offer to engage in a real estate transaction.
>
> (d) Refuse to negotiate for a real estate transaction with a person.

MCL 37.2501(b) defines "Real estate transaction" as "the sale, exchange, rental or lease of property or an interest therein."

A prima facie case of discrimination can be established by demonstrating either intentional discrimination or disparate treatment. *Reisman v Wayne State Regents*, 188 Mich App 526, 538; 470 NW2d 678 (1991). Intentional discrimination can be proven by either direct or indirect evidence. *Harrison v Olde Financial*, 225 Mich App 601, 606; 572 NW2d 679 (1997). "Direct evidence" is defined "as evidence that, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor." *Id*. at 610 (citations and quotation marks omitted). Establishing a prima facie case requires "only that the plaintiff has provided enough evidence to create a rebuttable presumption of discrimination." *Id*. at 607-608. "If the court concludes that the plaintiff has established a prima facie case of discrimination, the court then examines whether the defendant has articulated a legitimate, nondiscriminatory reason for its action. If that articulation is made, the court next considers whether the plaintiff has proved by a preponderance of the evidence that the reason offered by the defendant was a mere pretext for discrimination." *Id*. at 608 (citations omitted).

In support of his claim, defendant offers examples of conduct that he contends serves as both direct and indirect evidence of plaintiff's discriminatory animus. First, defendant refers this Court to alleged discriminatory comments by WSU Dean Sandra Yee characterizing the food served at his establishment as "gas station food," which defendant construes to be a derogatory

-4-

ethnic comment because of the alleged stereotypical belief that gas stations are primarily owned by persons of Middle Eastern heritage or origin. He further asserts that plaintiff altered its policies to hamper or preclude his business, and that Yee made a comment to another employee of plaintiff indicating that defendant's business should be "contained."

The record indicates that Yee's first in-person contact with defendant was at her deposition. Yee's criticisms of Delilah's Café involved the lack of healthy food options, its encroachment of merchandise outside the confines of the Café and security concerns involving the propping open of doors to the loading dock. Yee noted that the types of items offered by the Café also presented problems or difficulties in keeping a clean and neat environment in the library. It is undisputed that Yee authored an email to another employee of plaintiff, Habelah Ghareeb, indicating her concerns pertaining to the Café, including: (a) "healthier food offerings as well as something less 'gas station like' ", (b) "food wear and tear on the building", and (c) less expensive choices for students. Myson Hawthorne, WSU Associate Director for Access Services, did not specifically recall Yee's use of the word "contained," but testified at his deposition that he understood Yee's concerns as involving the nature or type of food being provided and defendant's business's encroachment (by way of racks of snacks for sale) into areas of the library outside the leased space.

Defendant further alleges plaintiff's discriminatory treatment of another tenant (Ramzey Eid). Eid testified at his deposition that he leased space for a full-service restaurant from plaintiff, not within the confines of a library. His contention that plaintiff had discriminated against him was based on an employee of plaintiff, Ian Studders, having asked him at some point during their interactions whether he was "Persian." Eid construed this inquiry to comprise discriminatory animus, despite Studders having assisted Eid in securing a payment plan with WSU when his lease payments fell into arrears.

Defendant also contends that an orthodox Jewish professor was offended by a t-shirt worn by an employee of defendant referencing Palestine, and refused to hold classes after demanding that the employee not wear the t-shirt. Defendant further contends that an unidentified employee of plaintiff suggested that defendant would not be permitted to succeed at the university.

Defendant has provided mere speculation in support of his CRA claim. The comments by Yee are neutral on their face and only interpreted by defendant as derogatory and evidencing animus. Yee's criticisms of Delilah's Café did not touch on race or ethnic origins, referring only to the type of fare being offered and the problems it was creating in maintaining a proper library environment. Further, even if Eid's allegations were related to defendant's claim, Eid's testimony indicates that an employee of plaintiff assisted Eid in implementing a payment plan to address his lease arrearages despite an arguably inappropriate inquiry into Eid's ethnicity. Defendant offers no documentation or evidence of the comment attributed to the unidentified employee. Moreover, a comment by an unidentified individual, which cannot be demonstrated or substantiated, and the actions of an individual professor, do not support defendant's claim of national origin discrimination on the part of plaintiff. Thus, even taking defendant's documentary evidence in the light most favorable to him, *American Home Assurance Co*, 288 Mich App at 716-717, defendant has not established a prima facie case for discrimination under the CRA. The trial court did not err in dismissing defendant's CRA claim.

## IV. UNJUST ENRICHMENT AND QUANTUM MERUIT

Defendant also contends that an implied contract existed between plaintiff and defendant concerning improvements made to the leasehold, and that plaintiff was unjustly enriched due to the monies invested and improvements made to the leasehold space by defendant. The trial court properly dismissed these claims, because they are precluded by the existence of an express contract.

Both unjust enrichment and quantum meruit are equitable theories of recovery based on the existence of an implied contract. See *Barber v SMH (US), Inc*, 202 Mich App 366, 375; 509 NW2d 791 (1993); *Keywell & Rosenfeld v Bithell*, 254 Mich App 300, 358-359; 657 NW2d 759 (2002) (citation omitted).

"[A] contract will be implied only if there is no express contract covering the same subject matter." *Belle Isle Grill Corp v City of Detroit*, 256 Mich App 463, 478; 666 NW2d 271 (2003). "Generally, an implied contract may not be found if there is an express contract between the same parties on the same subject matter." *Morris Pumps*, 273 Mich App at 194 (quotation marks, citations, and emphasis omitted).

The initial dispute between plaintiff and defendant involved an express contract to lease space in an undergraduate library. The lease contains an extensive and specific term related to improvements and additions to the leasehold. Specifically, the lease provides that general improvements, additions, or improvements to the leasehold require the prior written consent of plaintiff, and, unless provided for in a separate agreement or written notice by plaintiff, become the property of plaintiff upon the termination of the lease, while "trade-specific" improvements remain the property of defendant. Based on the existence of this express agreement, defendant cannot avail himself of equitable remedies. It is a well-recognized precept that a party cannot seek an implied contract to remedy unjust enrichment when an express contract covering the same subject matter exists between the same parties. *Belle Isle Grill Corp*, 256 Mich App at 478. Defendant's assertion of claims related to an implied contract is thus without merit. *Morris Pumps*, 273 Mich App at 194; *Barber*, 202 Mich App at 375.

## V. SPECIFIC PERFORMANCE

Defendant argues that the trial court erred in dismissing as moot his specific performance claim, which is puzzling given that plaintiff's eviction action was unsuccessful and defendant has retained his leasehold interest. We disagree with any suggestion that the trial court erred in this regard.

The trial court correctly held that defendant's request for specific performance is rendered moot by the prior trial court order awarding him the right to unilaterally renew his lease agreement. No meaningful relief can be provided because defendant has retained occupancy and continues to function in the leasehold space, without interruption. See *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998). There is no other reasonable

requirement for performance remaining under the lease other than what has already been awarded.[5]

## VI. BREACH OF CONTRACT

Defendant further argues that the trial court erred in granting summary disposition to plaintiff on defendant's breach of contract counterclaim, because plaintiff breached the covenant of quiet enjoyment in his lease agreement. Defendant did not, however, in either his initial counterclaim or his amended counterclaim, make any allegations pertaining to a breach of the covenant of quiet enjoyment. The trial court thus could have properly dismissed the claim in accordance with MCR 2.116(C)(8) (failure to state a claim on which relief can be granted). Additionally, this claim is unpreserved for appeal. *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 443; 695 NW2d 84 (2005).

Regardless of preservation, defendant cannot demonstrate that a genuine issue of material fact exists regarding an alleged breach of the covenant of quiet enjoyment. Leaseholders have a right to beneficial enjoyment of the land "for the purpose for which the premises are rented, at least to the extent disclosed to the lessor at the making of the lease." *Grinnell Bros v Asiuliewicz*, 241 Mich 186, 188; 216 NW 388 (1927). A breach of the covenant of quiet enjoyment occurs when a landlord "obstructs, interferes with, or takes away from the tenant in a substantial degree the beneficial use of the leasehold." *Slatterly v Madiol*, 257 Mich App 242, 258; 668 NW2d 154 (2003). Defendant cannot demonstrate that plaintiff has substantially interfered with his leasehold interest. Defendant was never deprived of access to or the occupancy of the leasehold. He continued to maintain his store and operate it throughout the landlord-tenant dispute and beyond. Plaintiff's requirement that defendant remove merchandise racks from the area outside the entrance to the Café did not interfere with any right of quiet enjoyment, as the placement of the merchandise racks was outside defendant's leased area and did not unreasonably intrude on defendant's control or use of the area defined in his lease agreement. Plaintiff's alteration of signage in the library directing students to his establishment, and other alleged acts of interference with the promotion of his business, did not interfere with defendant's possession or use of his leasehold. Defendant's claim for breach of contract is thus without merit.

## VII. INTERFERENCE WITH AN ADVANTAGEOUS BUSINESS RELATIONSHIP.

Defendant asserts that the trial court also erred in dismissing his counterclaim for tortious interference with an advantageous business relationship. We disagree. As discussed in *Mino v Clio Sch Dist*, 255 Mich App 60, 78; 661 NW2d 586 (2003) (citations omitted):

> The elements of tortious interference with a business relationship are the existence of a valid business relationship or expectancy, knowledge of the

---

[5] Defendant appears to argue in this portion of his appellate brief that plaintiff's eviction action was frivolous. Any such claim is not related to the mootness of defendant's counterclaim for specific performance.

relationship or expectancy on the part of the defendant, an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the plaintiff. To establish that a lawful act was done with malice and without justification, the plaintiff must demonstrate, with specificity, affirmative acts by the defendant that corroborate the improper motive of the interference. Where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference.

In other words, " 'One who alleges tortious interference with a contractual or business relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another.' " *CMI Int'l, Inc v Intermet Int'l Corp*, 251 Mich App 125, 131; 649 NW2d 808 (2002), quoting *Feldman v Green*, 138 Mich App 360, 378; 360 NW2d 881 (1984). "A wrongful act per se is an act that is inherently wrongful or an act that can never be justified under any circumstances." *Prysak v R L Polk Co*, 193 Mich App 1, 12-13; 483 NW2d 629 (1992). "If the defendant's conduct was not wrongful per se, the plaintiff must demonstrate specific, affirmative acts that corroborate the unlawful purpose of the interference." *CMI Int'l*, 251 Mich App at 131.

Defendant relies upon three examples of behavior by plaintiff to substantiate his claim. The first is plaintiff's restriction on his placement of merchandise racks in the library hallway outside the entrance to his establishment. While defendant contends that the enforcement of this restriction implies a malicious intent to interfere with his ability to display his product and secure business, employees of plaintiff testified at their depositions that the racks intruded into an area not covered by defendant's lease agreement and were also deemed a possible safety hazard because the racks obstructed access to a fire extinguisher. Defendant does not deny that his placement of merchandise racks outside the leased premises comprised an encroachment into an area that is not governed by his lease and, thus, plaintiff's restrictions on this space were neither contrary to the lease nor a malicious interference with defendant's business; rather, they were motivated by legitimate business reasons, namely control of space not leased to defendant and safety concerns. " 'Where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference.' " *Dalley v Dykema Gossett, PLLC*, 287 Mich App 296, 324; 788 NW2d 679 (2010) (citation omitted).

Defendant also complains that certain exterior signage was altered, negatively affecting his business. However, in accordance with the parties' lease agreement, plaintiff had exclusive authority pertaining to signage. Further, plaintiff never obligated itself to provide promotional signage to defendant, and asserted before the trial court that the decision was made to remove all advertising signs from the exterior of the library, as part of an effort to maintain a clean library, and that this decision applied to all businesses, not just defendant's. Such an exercise of authority by plaintiff is in conformity with the lease agreement and a legitimate business activity. *Id*. Consequently, defendant has failed to demonstrate any wrongful act by plaintiff in the determination and control of its signage.

Defendant also challenges the removal from brochures distributed to plaintiff's incoming freshmen of a reference identifying the location of Delilah's Café in the library. Plaintiff

asserted that the omission was due to its understanding that the lease for the property was expiring and, therefore, that the restaurant would not be occupying the library location. In addition, the omission did not constitute interference with defendant's advantageous business relationship, as plaintiff was under no obligation contractually to provide defendant with advertising or promotional literature for his business. Although defendant ultimately prevailed in retaining his leasehold, the action of plaintiff in preparing the brochure does not comprise a wrongful act. Defendant has also failed to demonstrate that omission of the reference from the brochure was done with malice or to purposefully interfere with his business, given the reasonable explanation by staff that there was a belief that the business would not be remaining in the current library location. *Id*.

In sum, plaintiff's actions were motivated by legitimate business reasons, and the trial court did not err in granting summary disposition to plaintiff on defendant's tortious interference counterclaim.

## VIII. ATTORNEY FEES

Finally, defendant contends that he is entitled to damages in the form of attorney fees incurred in defending the eviction litigation initiated by plaintiff and in conjunction with the prosecution of his counterclaim. We disagree.

In *Aroma Wines & Equip, Inc v Columbian Distrib Servs, Inc*, 303 Mich App 441, 451; 844 NW2d 727 (2013), aff'd and remanded 497 Mich 337 (2015), citing *Brown v Home-Owners Ins Co*, 298 Mich App 678, 689-690; 828 NW2d 400 (2012), this Court stated:

> A trial court's decision to grant or deny a motion for attorney fees presents a mixed question of fact and law. This Court reviews the trial court's findings of fact for clear error, and questions of law de novo. "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake was made." However, this Court reviews for an abuse of discretion a trial court's ultimate decision whether to award attorney fees. "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." [Citations omitted.]

Additionally, this Court reviews "for clear error the circuit court's decision to impose sanctions on the ground that an action was frivolous within the meaning of MCR 2.625(A)(2) and MCL 600.2591." *Ladd v Motor City Plastics Co*, 303 Mich App 83, 103; 842 NW2d 388 (2013).

"Under the 'American rule,' attorney fees are not recoverable as an element of costs or damages unless expressly allowed by statute, court rule, common-law exception, or contract." *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005). Here, defendant argues that he is entitled to attorney fees incurred based on the frivolous nature of plaintiff's action. MCR 2.625(A)(2) allows a trial court to order payment of a party's attorney fees by a party who has pressed a frivolous action or defense under MCL 600.2591. A "frivolous" action requires demonstration of at least one of the following:

(i) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

(ii) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

(iii) The party's legal position was devoid of arguable legal merit. [MCL 600.2591(3)(a).]

Defendant also argues that plaintiff's eviction action was sanctionable under MCR 2.114, because it was not well grounded in fact and was devoid of arguable legal merit. MCR 2.114(D)(2). Defendant's argument is that, under either the statute or court rule, plaintiff could not have reasonably interpreted the renewal term of the lease agreement as allowing for his eviction.

"The purpose for punishing with sanctions the introduction of frivolous claims is to deter parties and attorneys from filing documents or asserting claims and defenses that have not been sufficiently investigated and researched or that are intended to serve an improper purpose." *Harrison v Munson Healthcare, Inc*, 304 Mich App 1, 41; 851 NW2d 549 (2014), overruled in part on other grounds *Krusac v Covenant Med Ctr, Inc*, 497 Mich 251; 865 NW2d 908 (2015) (citations and quotation marks omitted.) The purpose of imposing sanctions is not to discipline litigants and attorneys "whose cases are complex or face an 'uphill fight.'" *Louya v William Beaumont Hosp*, 190 Mich App 151, 163-164; 475 NW2d 434 (1991). "The ultimate outcome of the case does not necessarily determine the issue of frivolousness." *Id*. at 164.

In this instance, the eviction litigation initiated by plaintiff was focused on the following lease provision with defendant:

2. **Term**

The term of this Lease shall be for a period of five (5) years beginning July 1, 2006 and ending June 30, 2011. This Lease may be renewed in writing signed by both parties for an additional term of five (5) years. If Tenant exercises the Renewal Option, then the rent for each year of the renewal term shall be as indicated in Paragraph 3 B.

The trial court in granting summary disposition in favor of defendant did not hold that plaintiff's action was frivolous or without arguable legal merit. Further, our review of the disputed lease provision indicates that the issue was reasonably subject to divergent interpretations given both the suggestion that a renewal required signature of both parties and the implication of a right of the tenant to exercise a renewal option. MCR 2.114(D)(2) was therefore not violated, nor was defendant entitled to attorney fees in accordance with MCL 600.2591. Defendant has not demonstrated the existence of an applicable statute, court rule, common-law exception or contractual provision permitting an award of attorney fees, and the trial court did not err in declining to award them for defendant's defense of plaintiff's eviction action. *Reed*, 265 Mich App at 164.

Finally, defendant asserts that he is entitled to attorney fees and costs based on his counterclaim. Defendant provides no basis in any statute, court rule or common-law exception to justify an entitlement to attorney fees, particularly given the determination that the claims asserted in his counterclaim were properly subject to summary dismissal. *Id*.

Affirmed.

/s/ Deborah A. Servitto
/s/ Kurtis T. Wilder
/s/ Mark T. Boonstra