*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* DOROTHY MARIE TALANDA TRUST.

CAMILLE FATH, EDMUND TALANDA, and
KATHLEEN TALANDA POTTS,

        Appellees,

v

LARAINE GOETTING, MICHELE KRAFT, and
DANIEL BROXUP,

        Appellants,

and

TIMOTHY WAALKES, Trustee of the DOROTHY
MARIE TALANDA TRUST,

        Other Party.

UNPUBLISHED
May 18, 2023

No. 360176
Kent Probate Court
LC No. 20-207551-TV

*In re* EDMUND TALANDA TRUST.

CAMILLE FATH, EDMUND TALANDA, and
KATHLEEN TALANDA POTTS,

        Appellees,

v

LARAINE GOETTING, MICHELE KRAFT, and
DANIEL BROXUP,

        Appellants,

No. 360231
Kent Probate Court
LC No. 20-207552-TV

-1-

and

TIMOTHY WAALKES, Trustee of the EDMUND
TALANDA TRUST,

Other Party.

_____

Before: MARKEY, P.J., and MURRAY and FEENEY, JJ.

PER CURIAM.

In Docket No. 360176, appellants, Loraine Goetting, Michele Kraft, and attorney Daniel Broxup, appeal by right the probate court's order awarding appellees, Camille Fath, Edmund Talanda, and Kathleen Talanda Potts, $51,960 in attorney fees and costs in relation to litigation regarding the administration of the Dorothy Marie Talanda Trust. The order also awarded Fath, in her capacity as former cotrustee, $13,377.50 in attorney fees and costs. The awards of attorney fees and costs were entered against the appellants jointly and severally. The exact same order concerning attorney fees and costs was also entered in the lower court file pertaining to the administration of the Edmund Talanda Trust, forming the basis of appellants' appeal by right in Docket No. 360231. This Court consolidated the appeals "to advance the efficient administration of the appellate process."[1] On appeal, appellants pose three general arguments: (1) the probate court abused its discretion by finding that claims presented in appellants' counterpetition were frivolous and were, in part, solely meant to harass former cotrustee Fath; (2) the probate court abused its discretion by finding that appellants engaged in discovery and procedural abuses; and (3) the probate court abused its discretion in its determination of the amount of sanctions. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

The claims in this consolidated appeal relate to issues that this Court considered in a prior appeal in *In re Dorothy Marie Talanda Trust*, unpublished per curiam opinion of the Court of Appeals, issued May 12, 2022 (Docket No. 356293), relative to a lakefront parcel of land (the lake lot). We note that this Court additionally issued an affiliated opinion in *In re Edmund Talanda Trust*, unpublished per curiam opinion of the Court of Appeals, issued June 23, 2022 (Docket No. 358074), which addressed a lakefront cottage (the cottage).

During their lifetimes, decedents Dorothy Talanda and Edmund Talanda,[2] established separate revocable living trusts. Both served as the initial trustee of their respective trusts until their deaths. Dorothy Talanda died in December 2017, and Edmund Talanda died in March 2019.

_____

[1] *In re Dorothy Marie Talanda Trust; In re Edmund Talanda Trust*, unpublished order of the Court of Appeals, entered February 16, 2022 (Docket Nos. 360176 and 360231).

[2] We will hereafter refer to decedent Edmund Talanda by his full name and to his living son and appellant Edmund Mark Talanda as "Edmund."

-2-

With the exception of successor trustee Timothy Waalkes and attorney Broxup, the parties are siblings who were beneficiaries of their parents' trusts: Goetting, Kraft, Fath, Edmund, and Potts. Susan Minehart and Annette Talanda Brennan are also part of the group of siblings who were beneficiaries; however, they are not parties to this appeal. Fath and Brennan acted as cotrustees of the trusts after their parents' deaths, but disagreements in regard to the distribution of trust assets arose, making it impossible to finalize the administration of the trusts.

Disputes over trust assets resulted in the development of a rift between Fath, Edmund, Potts, and Minehart on one side and Brennan, Kraft, and Goetting on the other side. This divide between siblings resulted in their decision to engage in mediation to determine the disposition of the assets held by the trusts. The parties eventually consented to having the mediator issue a proposal on issues that remained unresolved. The mediator's proposal became a settlement agreement. And as part of that settlement agreement, Fath and Brennan agreed to resign as cotrustees. Waalkes subsequently took over as successor trustee of the two trusts. The settlement agreement addressed the sale of the lake lot, providing:

> The vacant lot on Gourdneck Lake will be offered for sale by owner for 30 days, and if not sold then it will be listed for sale as directed by the Trustee of the Trust. In the event the property is listed with an agent for sale, the beneficiaries will defer to the directions of the listing agent.

Fath eventually purchased the lake lot for $325,000, after it was listed for sale with a realtor. Another pertinent portion of the settlement agreement addressed the distribution of the cottage. The agreement provided:

> The interest of the Estates and Trusts in the Gourdneck Lake cottage property will be assigned to Ed Talanda, Camille Fath, Susan Talanda, and Kathleen Potts for the agreed upon price of $60,000. Ed Talanda, Camille Fath, Susan Talanda, and Kathleen Potts will take immediate and exclusive possession and pay all costs, fees, etc. Ed Talanda, Camille Fath, Susan Talanda, and Kathleen Potts have until November 28, 2019 to notify the Trust whether they want to consummate the transaction. In the event they decline, then the property will be immediately listed for sale on such terms as the Trustee of the Trust determines.

Fath, Edmund, and Potts eventually filed a petition in the probate court seeking to enforce the settlement agreement relative to the cottage and the lake lot. Goetting and Kraft, through attorney Broxup, filed a counterpetition, which sought to set aside the sale of the lake lot and disputed the contention that Fath and Edmund provided proper notice to take possession of the cottage. The parties filed cross-motions for summary disposition, and the probate court found in favor of Fath, Edmond, and Potts with respect to both the lake lot and the cottage. A panel of this Court affirmed the probate court's decision concerning the lake lot. *In re Dorothy Marie Talanda Trust*, unpub op at 1.[3]

---

[3] The same panel dismissed the appeal relating to the cottage for lack of jurisdiction. *In re Edmund Talanda Trust*, unpub op at 2.

Appellees Fath, Edmund, and Potts then filed a petition for attorney fees and costs, arguing that appellants Goetting and Kraft's claims in the counterpetition were not well grounded in fact or were brought solely for the purpose of harassing former cotrustee Fath. Moreover, appellees asserted that appellants engaged in discovery and procedural abuses during the proceedings. The probate court awarded appellees attorney fees and costs in the amount of $51,960 against appellants, jointly and severally. The probate court also ordered appellants to pay $13,377.50 in attorney fees and costs to Fath, in her capacity as a former cotrustee.

## II. ANALYSIS

## A. STANDARD OF REVIEW

"This Court reviews a trial court's ruling on a motion for costs and attorney fees for an abuse of discretion." *Keinz v Keinz*, 290 Mich App 137, 141; 799 NW2d 576 (2010); see also *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Smith*, 481 Mich at 526. "A trial court's finding that an action is frivolous is reviewed for clear error." *John J Fannon Co v Fannon Prods, LLC*, 269 Mich App 162, 168; 712 NW2d 731 (2005) (quotation marks and citation omitted). "Findings are clearly erroneous when, although there is evidence to support them, the reviewing court on the entire record is left with a definite and firm conviction that a mistake was made." *C D Barnes Assoc, Inc v Star Heaven, LLC*, 300 Mich App 389, 425; 834 NW2d 878 (2013).

## B. COUNTERPETITION

First, appellants argue that the probate court erred by concluding that the allegations in the counterpetition were frivolous. We disagree.

MCR 1.109(E)(2) requires every court filing to be signed by a party's attorney or, if not represented, the party directly. In addition, MCR 1.109(E)(5) provides:

> The signature of a person filing a document, whether or not represented by an attorney, constitutes a certification by the signer that:
>
> (a) he or she has read the document;
>
> (b) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and
>
> (c) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

If a filed document is signed in violation of MCR 1.109(E)(5), "the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including

reasonable attorney fees." MCR 1.109(E)(6). In addition to these sanctions, "a party pleading a frivolous claim or defense is subject to costs as provided in MCR 2.625(A)(2)." MCR 1.109(E)(7). And MCR 2.625(A)(2) provides that "[i]n an action filed on or after October 1, 1986, if the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591." MCL 600.2591 provides, in pertinent part:

> (1) Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

> (2) The amount of costs and fees awarded under this section shall include all reasonable costs actually incurred by the prevailing party and any costs allowed by law or by court rule, including court costs and reasonable attorney fees.

An action is "frivolous" when a "party's primary purpose in initiating the action . . . was to harass, embarrass, or injure the prevailing party," "[t]he party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true," or when "[t]he party's legal position was devoid of arguable legal merit." MCL 600.2591(3)(a). MCL 600.2591(1) "not only authorize[s] but require[s] a court to sanction an attorney or party that files a frivolous action or defense." *Meisner Law Group PC v Weston Downs Condo Assoc*, 321 Mich App 702, 731; 909 NW2d 890 (2017). The question whether a claim or defense is frivolous is evaluated at the time the claim or defense was raised. *In re Costs & Attorney Fees*, 250 Mich App 89, 94; 645 NW2d 697 (2002). The objective of sanctions "is to deter parties and attorneys from filing documents or asserting claims and defenses that have not been sufficiently investigated and researched or that are intended to serve an improper purpose." *FMB-First Mich Bank v Bailey*, 232 Mich App 711, 723; 591 NW2d 676 (1998). Sanction provisions should not be construed in a manner that has a chilling effect on advocacy, that prevents a party from bringing a difficult case, or that penalizes a party whose claim initially appears viable but later becomes unpersuasive. *Louya v William Beaumont Hosp*, 190 Mich App 151, 163; 475 NW2d 434 (1991). "Not every error in legal analysis constitutes a frivolous position," and "merely because this Court concludes that a legal position asserted by a party should be rejected does not mean that the party was acting frivolously in advocating its position[,]" especially in regard to legal issues that are complex and not easily resolved. *Kitchen v Kitchen*, 465 Mich 654, 662-663; 641 NW2d 245 (2002).

One of the allegations that the probate court found to be frivolous was the claim that Fath had interfered with respect to negotiations with neighbors concerning the sale of the lake lot. Specifically, Goetting and Kraft asserted that Fath was not willing to sanction or approve the sale of the lake lot for $400,000 or $450,000; however, she then purchased the lake lot herself for $325,000, which amounted to a breach of fiduciary duty. This allegation was not supported by e-mail correspondence between the parties' respective attorneys. Brennan's counsel had suggested a counteroffer of $550,000 to an offer by the neighbors of $400,000. Fath merely agreed to go along with Brennan's counsel's advice. After the neighbors countered at $450,000, Brennan's attorney suggested that the lake lot be listed for sale rather than accept the $450,000 amount. Fath again simply agreed.

Appellants contend that the allegation cannot form the basis of a claim of frivolousness because it was subsequently removed in an amended counterpetition. We disagree. The aforementioned e-mail correspondence, which plainly did not support appellants' allegation, was exchanged approximately eight months before the initial counterpetition was filed. Moreover, before the counterpetition was filed, Pamela Cross, one of the attorneys who represented Fath, explained in an e-mail to Broxup that Fath did not participate in the negotiations with the neighbors. At the time of the hearing concerning the petition for attorney fees and costs, Broxup did assert to the probate court that Brennan only made the counteroffer of $550,000 because Fath and Potts believed that the lake lot was worth $600,000. In other words, Broxup essentially claimed that Brennan was only attempting to appease her siblings. We conclude, however, that this contention is not supported by any record evidence and is contradicted by the e-mail communications. Further, despite Broxup's contention that the allegation at issue was dropped in the amended counterpetition, he continued to argue that Fath was responsible for the failed negotiations at the time the court was considering the petition for attorney fees and costs. As a result, we cannot conclude that the probate court erred by taking the allegation into consideration when ruling on attorney fees and costs. In short, given the communications between the parties' attorneys, we find that the probate court did not clearly err by determining that the allegation was frivolous because Broxup had failed to conduct a reasonable inquiry into the factual viability of the allegation before he signed the counterpetition. See *John J Fannon Co*, 269 Mich App at 170.

The next allegation deemed frivolous by the probate court that Broxup challenges on appeal is the claim that Fath breached her fiduciary duty by rejecting Goetting and Kraft's offer to purchase the lake lot for $450,000. This Court addressed the claim, soundly rejecting it:

> Counsel for Brennan sent an e-mail to the attorneys representing the other beneficiaries and the mediator proposing, among other things, that the lot be distributed to Goetting and Kraft for $450,000. The remaining beneficiaries proposed a sale price of $460,000, but Goetting and Kraft did not agree, and the negotiations eventually ceased.

> Contrary to appellants' arguments, the January 3, 2020 e-mail was not a formal offer to purchase the lot for $450,000 that Fath rejected on behalf of the trust. Rather, the e-mail contained a set of proposed modifications to the settlement agreement. These modifications were not accepted by three of the beneficiaries, including Fath, and were never incorporated into the settlement agreement.

> In any event, even if the January 3 e-mail contained an offer to purchase the property, Fath was not acting as a cotrustee when she declined this proposal. The e-mail was sent to counsel for Fath, Edmund, and Potts, seeking their agreement to the proposed modifications. Those three beneficiaries did not agree to the proposed modifications, but instead proposed that the lot be sold to appellants for $460,000. The record supports the conclusion that Fath was not acting as a cotrustee when the rejection of the proposed modifications was communicated to Brennan; rather, she was acting as one of the beneficiaries who declined to accept the proposed modifications. In her deposition, Fath testified that she was in favor of accepting the proposed $450,000 for the lake lot, but that Potts was in favor of countering for $460,000. Fath ultimately agreed with Potts, and the proposed $460,000 sale price

was communicated. Fath stated that she believed at the time that the lot was worth more than the appraised value, based on a previous offer made by the neighboring property owners to purchase the lot for $450,000 (which all beneficiaries had agreed to reject) and information she had received from Edmund, who had built a house for his daughter on a nearby lake and was well acquainted with lakefront property in the area. The January 3 e-mail itself stated that the lot was worth $500,000, which shows that Brennan, Kraft, and Goetting also believed that the lot was worth more than the appraised value and their proposed purchase price. Consequently, appellants have not shown that Fath's rejection of this proposal as a beneficiary was a breach of her fiduciary duty as a cotrustee.

Moreover, the record shows that Waalkes informed all beneficiaries that the lot had been listed for $450,000 and invited offers. Despite their claim that they were willing to purchase the lot for $450,000, Goetting and Kraft never made an offer to purchase the lot once it was listed. Kraft acknowledged receiving the April 15, 2020 e-mail from Waalkes but stated that she wanted to see what other offers came in because she wanted to gauge the price. Goetting stated that by the time the lot was listed for sale, as a result of financial constraints, she had a budget of $380,000 for the property, yet made no offers after she was informed that the trust would be willing to sell the property for $325,000. Fath made a cash offer for $325,000 after Kaylor's[4] offer fell through. No beneficiary made any higher offers. Therefore, Fath's offer and subsequent purchase did not result in any damage to the trust, because the trust ultimately received $325,000, which was the same as the counteroffer proposed to the third party and what Kaylor had offered. This amount was also more than the $300,000 that the realtor had suggested the lot was worth. [*In re Dorothy Marie Talanda Trust*, unpub op at 5-6.]

Although this Court was not examining the issue in the context of a claim of frivolousness but was instead assessing whether a genuine issue of material fact existed under MCR 2.116(C)(10), the reasoning expressed by this Court plainly demonstrated the patent frivolousness of the contention that Fath breached a fiduciary duty by rejecting Goetting and Kraft's offer to purchase the lake lot for $450,000. We conclude that the probate court did not err by finding that appellants' claim was not well grounded in fact. Moreover, it is unmistakably clear to us that appellants' claim was not warranted by existing law and entirely devoid of arguable legal merit. Reversal is unwarranted.

Appellants further challenge the probate court's finding of untruthfulness with respect to the allegation that Fath's report to Waalkes was inaccurate and constituted a breach of duty. The probate court also believed that the allegation that Fath provided inaccurate information to Waalkes was brought to harass her because no similar action was brought against the other cotrustee. In connection with this particular allegation by appellants, this Court ruled:

---

[4] This is a reference to Gary Kaylor, who is Kraft's son.

Moreover, appellants' assertion that Fath breached her duty to the trust by providing false information to Waalkes is also without merit. In Fath's report to Waalkes, she stated that Goetting and Kraft had offered to buy the lot for $460,000, but had ultimately declined to sign the purchase agreement. Fath acknowledged in her deposition that Brennan's attorney did initially write $450,000 in his proposal e-mail, but that Fath, Edmund, and Potts had countered with a proposed price of $460,000, and that Goetting and Kraft had declined that counter-proposal. Therefore, even if Fath's report was inaccurate in stating that Goetting and Kraft had agreed to $460,000 but had refused to sign the purchase agreement, instead of stating that they had rejected a counter-proposal of $460,000, the salient point was that, whether the price was $450,000 or $460,000, the parties had failed to come to an agreement. Fath's report also indicated that family members may be interested in purchasing the lake lot. As observed by the probate court, Brennan did not mention Goetting and Kraft's possible interest in her report. Waalkes explained that Goetting and Kraft's interest was unclear, but the requirement that the lot be listed for sale was clear. Once the lot was listed, Waalkes notified the beneficiaries of the listing and invited them to make offers. As stated, appellants failed to make an offer once the lot was on the market.

We conclude that Fath did not breach her fiduciary duties to the trust in relation to the sale of the lot. The lot was listed for sale as required by the settlement agreement, all beneficiaries were invited to make offers, and the ultimate sale was for a price that was more than the realtor had opined the lot was worth. Therefore, the probate court properly granted the motion for summary disposition in favor of Fath, Edmund, and Potts, and dismissed the counterpetition's claims related to Fath's fiduciary duties. [*In re Dorothy Marie Talanda Trust*, unpub op at 6.]

To the extent that the probate court may have erred by determining that appellants' allegation was not well grounded in fact, we nevertheless hold that there was no error by the court in concluding that the primary purpose of the allegation was to harass Fath. The passage from this Court's opinion quoted above makes abundantly clear that even if there was an inaccuracy in Fath's report to Waalkes, it was entirely irrelevant and had absolutely no impact on the case, leading us to the inevitable conclusion that the allegation was made to harass Fath. Furthermore, appellants' claim was not warranted by existing law and entirely devoid of arguable legal merit.

Finally, appellants assert that they abandoned the "frivolous" claim that Goetting and Kraft had not heard anything about the lake lot until it was sold to Fath; therefore, their claim could not serve as the basis for sanctions. In other words, they ultimately acknowledged that Waalkes sent an e-mail informing all the beneficiaries that the lot had been listed for sale. This is another allegation that was addressed in Cross's e-mail to Broxup. She explained that Waalkes had sent an e-mail to all the beneficiaries informing them that the lake lot was being listed for sale and inviting them to submit offers. Moreover, Cross also mentioned that Waalkes met with Potts and Kraft and told them that he that he was going to make a counteroffer to an unrelated third party for $325,000. She revealed that Waalkes accepted Kraft's son's offer to purchase the lot for $325,000, but he was ultimately unable to obtain adequate financing. Cross's e-mail should have at least put Broxup on notice that additional research was necessary. But nonetheless Goetting and Kraft filed

the counterpetition alleging that they had not heard anything about the sale of the property until it was purchased by Fath, even though Broxup had been informed that the allegation was untrue.

Ultimately, the probate court was familiar with the history of the case and the parties' positions and disputes. The court carefully considered the allegations and determined that it was unreasonable for appellants to believe that the allegations were factually supported. Considering the record in this case, the probate court did not clearly err by concluding that the allegations in the counterpetition were frivolous. See *John J Fannon Co*, 269 Mich at 170 (holding that the attorney failed to conduct a reasonable inquiry into the factual and legal viability of the claims before he signed the pleadings such that the order for sanctions was not clearly erroneous).

## C. DISCOVERY AND PROCEDURAL ABUSES

Next, appellants assert that the probate court erred by ruling that they had engaged in discovery and procedural abuses that warranted an award of sanctions. We disagree.

MCR 2.302 addresses the general rules governing discovery. In pertinent part, MCR 2.302(G)(3) provides:

> The signature of the attorney or party constitutes a certification that he or she has read the disclosure, request, response, or objection, and that to the best of the signer's knowledge, information, and belief formed after a reasonable inquiry:
>
> * * *
>
> (b) the discovery request, response, or objection is:
>
> (*i*) consistent with these rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law;
>
> (*ii*) not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and
>
> (*iii*) not unreasonable or unduly burdensome or expensive, given the needs of the case, the disclosure and discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation.[5]

In this case, the probate court opined that several of the document requests and interrogatories submitted by Goetting and Kraft went beyond the scope of the issues before the court or were completely irrelevant. The probate court observed that there were two issues to be resolved—the assignment of the cottage and the sale of the lake lot. MCR 5.131 concerns

---

[5] The discovery rules in Subchapter 2.300 generally apply to civil actions in probate court and to probate proceedings. MCR 5.131(A) and (B)(1).

discovery in probate court proceedings. According to MCR 5.131(B)(3), "[d]iscovery in a probate proceeding is limited to matters raised in any petitions or objections pending before the court."

A majority of appellants' discovery requests were not focused on the cottage or the lake lot. The requests were also not limited to a specific point in time. The requests sought documents and communications concerning Fath's previous allegations of elder abuse against Brennan, medications that Fath was taking, whether Fath was accused of fraud or other acts of dishonesty, and the other civil proceedings in which Fath was involved. Interrogatory 12 asked whether Fath consulted with an attorney regarding a potential malpractice claim against her attorneys. Not only was this interrogatory unrelated to issues before the court, the probate court found it to be nothing short of "vexatio[us] and provocative." Broxup apologized for this interrogatory, explaining that it was not a "good thing to do." Broxup also apologized for his comment that Fath's attorney James Schipper was a bully in his response to the motion for a protective order. He acknowledged that he had not acted perfectly in the case.

Out of 20 document requests and 12 interrogatories, the probate court concluded that 14 of the document requests were either overly broad or irrelevant and that five of the interrogatories were irrelevant or submitted for an improper purpose. Considering the limited issues before the probate court, the court did not clearly err by concluding that several of the discovery requests were improper and warranted the imposition of sanctions. See MCR 1.109(E)(5)(c); MCR 2.302(G)(3)(b)(*ii*) to (*iii*) and (4).

Similarly, the probate court did not clearly err by concluding that the motion to disqualify Schipper was not filed for a proper purpose. Goetting and Kraft sought to disqualify Schipper, arguing that he was a necessary fact witness because he negotiated a modification to the settlement agreement related to the cottage, and because there was a possible conflict of interest. But, as observed by the probate court, Goetting and Kraft failed to identify any evidence that could only be produced by Schipper. Moreover, all the parties' attorneys participated in continued negotiations after the settlement agreement was reached, but Goetting and Kraft declined to seek disqualification of any of the other attorneys. For instance, there was no attempt to disqualify Brennan's counsel, who allegedly submitted the offer to purchase the lake lot on behalf of Goetting and Kraft. There was also no indication of a conflict of interest premised on legal malpractice by Schipper in representing Fath, especially when the motion was filed. Fath and Edmund's assertion was that they had provided adequate notice to accept or consummate the cottage transaction. And for the conflict-of-interest claim to have possibly become relevant, the probate court would have had to rule that the notice was inadequate. Accordingly, the probate court did not clearly err by concluding that the discovery requests and the motion to disqualify were filed for an improper purpose. See *John J Fannon Co*, 269 Mich App at 168.

D. ATTORNEY-FEES AWARD

Finally, appellants contend that the probate court's calculation of attorney fees constituted an abuse of discretion. We disagree.

In *Smith*, 481 Mich at 530-531, our Supreme Court provided the following framework to determine reasonable attorney fees:

We hold that a trial court should begin its analysis by determining the fee customarily charged in the locality for similar legal services, i.e., factor 3 under MRPC [Michigan Rules of Professional Conduct] 1.5(a).[6] In determining this number, the court should use reliable surveys or other credible evidence of the legal market. This number should be multiplied by the reasonable number of hours expended in the case (factor 1 under MRPC 1.5[a] and factor 2 under *Wood* [*v Detroit Auto Inter-Ins Exchange*, 413 Mich 573; 321 NW2d 653 (1982)]). The number produced by this calculation should serve as the starting point for calculating a reasonable attorney fee. We believe that having the trial court consider these two factors first will lead to greater consistency in awards. Thereafter, the court should consider the remaining *Wood*/MRPC factors to determine whether an up or down adjustment is appropriate. And, in order to aid appellate review, a trial court should briefly discuss its view of the remaining factors.

In *Wood*, 413 Mich at 588, the Supreme Court articulated the following factors to consider: "(1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client." (Quotation marks and citations omitted.)

Appellants do not argue that the hourly rate awarded to the attorneys was unreasonable. Rather, they maintain that the time spent on the relevant tasks was excessive. Specifically, appellants contend that the probate court ignored their objections to the billing entries, which is

---

[6] MRPC 1.5(a) provides as follows:

A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee. A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

not an accurate assessment. In any event, appellants do not identify any specific objections that the court failed to examine or identify billing entries that were improperly considered. Appellants generally argue that it would not be possible for counsel to go back and accurately remove entries that related to the litigation regarding the cottage. Schipper, however, testified that he reviewed the entries and removed any that concerned the cottage. Sara Fazio, who represented Fath in her capacity as former cotrustee, stated that she did not work on anything cottage related, so her fees were mostly related to the lake lot. We conclude that appellants have effectively abandoned this issue. See *MOSES, Inc v Southeast Mich Council of Governments*, 270 Mich App 401, 417; 716 NW2d 278 (2006) ("If a party fails to adequately brief a position, or support a claim with authority, it is abandoned."). Moreover, we conclude that the probate court complied with *Smith, Wood,* and MRPC 1.5(a), and did not err in calculating the amount of attorney fees.

We affirm. Having fully prevailed on appeal, appellees may tax costs under MCR 7.219.

/s/ Jane E. Markey
/s/ Christopher M. Murray
/s/ Kathleen A. Feeney